Filed 8/5/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

----

| | |
|---|---|
| BNSF RAILWAY COMPANY et al., | C072746 |
| Petitioners, | (P.U.C. Dec. No. 12-08-028) |
| v. | |
| PUBLIC UTILITIES COMMISSION, | |
| Respondent; | |
| CITY OF SAN CLEMENTE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING. To review a decision of the Public Utilities Commission. Decision annulled.

Sims Law Firm, Michael E. Murphy, and Selim Mounedji for Petitioners.

Frank R. Lindh, Helen W. Yee, and Stacie Castro for Respondent.

Goodin, MacBride, Squeri, Day & Lamprey, Michael B. Day, Suzy Hong, Thomas J. MacBride, Jr., and Megan Somogyi for Real Party in Interest.

This writ of review proceeding presents the question of whether the Public Utilities Commission (the commission) has the authority to order railroads to stop using locomotive-mounted horns at certain pedestrian rail crossings in the City of San Clemente (the city).  We conclude the answer to that question is "no," because in Public Utilities Code section 7604[1] the Legislature has commanded that an audible warning device mounted on the train must be sounded at every rail crossing in the state, except those within federally established quiet zones.  Because the pedestrian crossings at issue here are not within a federally established quiet zone, a train horn must be sounded at those crossings, and the commission has no authority to order otherwise.  Accordingly, we will set aside the commission's decision to the contrary.

FACTUAL AND PROCEDURAL BACKGROUND

In the city, a railroad track separates the beach from the bluff on which the residential and commercial areas of the city are located.  (*Matter of the Application of the City of San Clemente* (2004) Cal. P.U.C. Dec. No. 04-05-053, p. 1.)  The track is presently used by petitioner BNSF Railway Company (BNSF) in the operation of freight trains and by petitioner National Railroad Passenger Corporation (Amtrak) in the operation of passenger trains.  (We will refer to petitioners BNSF and Amtrak jointly as "the railroads.")

Before 2004, access across the railroad track to and from the beach was essentially uncontrolled; beachgoers would walk up and down the bluff on informal trails and cross the track at virtually any point they chose.  An effort to develop a more regular trail and safer crossings resulted in the San Clemente Pedestrian Beach Trail.  Part of the overall plan for the beach trail was the San Clemente Beach Safety Enhancement Project, which

---

[1]     Undesignated statutory references are to the Public Utilities Code.

2

included protective barriers, undercrossings, and at-grade crossings[2] and which was subject to the approval of the commission. The project, as approved by the commission in May 2004, coordinated the new beach trail with the improvement of two existing at-grade pedestrian crossings, the construction of four new at-grade pedestrian crossings, and the construction or improvement of four pedestrian undercrossings, "channeling pedestrians to the approved crossings through the use of vegetative barriers and fencing."[3]

While the project the commission approved increased public safety along the three-mile stretch of beach, the project also resulted in significant complaints regarding the noise of the trains transiting the area, because approximately 50 trains per day travel that stretch of track, and the trains blow their horns at all seven of the at-grade pedestrian crossings. Accordingly, in August 2011 the city filed an application with the commission asking for "authority and approval . . . to alter and improve [the] seven existing San Clemente Beach Trail At-Grade Crossings." In particular, the city sought approval to "[p]rovide an Audible Warning System (AWS) as a Supplemental Safety Measure at each Trail Crossing to be utilized during non-emergency conditions *in lieu of* train-mounted warning horns . . . in conjunction with other additions, alterations and improvements to the safety features of the Trail Crossings." (Italics added.) In its application, the city asserted that "[t]he AWS, implemented at the seven Trail Crossings, would replace and eliminate the routine train horn warnings that currently intrude on residents who live adjacent to the Trail Crossings . . . ." In support of its application, the city argued that

---

[2] "An 'at-grade' crossing is one [where the railroad track] physically crosses the road at street level." (*Santa Clara Valley Transportation Authority v. Public Utilities Com.* (2004) 124 Cal.App.4th 346, 351, fn. 3.)

[3] There is also one private at-grade crossing in the area that was not subject to the 2004 proceeding before the commission.

3

under a complex interplay of certain California statutes and federal regulations, the commission had the authority to approve the use of wayside horns (that is, horns mounted at the crossings) instead of train horns at the pedestrian trail crossings.**4**

In September 2011, the railroads filed a protest and response to the city's application, asserting that "because California state statutes require railroads to use locomotive mounted horns in advance of . . . pedestrian railroad crossings, the [commission] has no statutory authority to approve an automated wayside horn system . . . as a substitute for locomotive mounted horns, and the [commission] has no jurisdiction to order railroads to stop using locomotive mounted horns as required by California state statutes."

In February 2012, the city moved for an interim ruling from the commission on whether the commission had the authority to approve the city's request to use wayside horns in lieu of train horns. An administrative law judge (ALJ) granted that motion, and the parties briefed the jurisdictional issue.

In July 2012, the ALJ issued his proposed decision concluding that the commission has jurisdiction to consider approving the use of wayside horns instead of train horns at pedestrian rail crossings. The commission adopted that decision as its own in August 2012, effective immediately (Decision 12-08-028). Within 30 days, the railroads filed an application for rehearing to which the city responded, but the commission did not act on that application, and thus it was deemed denied after 60 days. (§ 1733, subd. (b).)

---

**4** In its application, the city reported that it had already "attempted to coordinate efforts to establish a federal Quiet Zone," but "[d]ue to the location of the Trail Crossings at issue in this Application, they are not eligible for inclusion in a Quiet Zone."

4

In November 2012, the ALJ issued a scoping memo and ruling setting an evidentiary hearing for January 2013 and the final decision for April 2013. In December 2012, the railroads commenced the present proceeding by filing a timely petition for a writ of review of the commission's jurisdictional decision in this court. We issued the writ in February 2013.

DISCUSSION

The issue in this case is whether the commission has the authority to prohibit trains from using their horns at pedestrian rail crossings, in favor of audible warning signals mounted at the crossings, where those crossings are not located in a federally established quiet zone. The railroads contend the commission does not have that authority. We agree.

I

*Sources And Limits Of The Commission's Authority*

We begin with the provisions of our state Constitution that govern public utilities, which are found in article XII. Section 3 of that article provides, as relevant here, that "[p]rivate corporations and persons that own, operate, control, or manage a line, plant, or system for the transportation of people or property . . . , and common carriers, are public utilities subject to control by the Legislature." Under this provision, "all railroad carriers [are] subject to legislative control." (*City of Union City v. Southern Pac. Co.* (1968) 261 Cal.App.2d 277, 278.) Section 1 of article XII provides for the composition of the commission, and section 4 gives the commission the power to "fix rates and establish rules for the transportation of passengers and property by transportation companies" (among other things). Section 5 of the article then provides that "[t]he Legislature has plenary power, unlimited by the other provisions of this constitution but consistent with this article, to confer additional authority and jurisdiction upon the commission. . . ."

5

The Legislature exercised this power when it enacted sections 1201 and 1202 of the Public Utilities Code, "which are . . . broadly worded grants of power to the [commission] over railroad crossings in general." (*Santa Clara Valley Transportation Authority v. Public Utilities Com.*, *supra*, 124 Cal.App.4th at p. 351.) Section 1201 gives the commission the power to permit the constructions of crossings of a "public road, highway, or street" and "the track of any railroad corporation." Subdivision (a) of section 1202 further provides in relevant part that the commission has the exclusive power "[t]o determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, use, and protection of . . . each crossing of a public or publicly used road or highway by a railroad."[5]

Even more broadly, the Legislature has authorized the commission to "supervise and regulate every public utility in the State and [to] do all things, whether specifically designated in [the Public Utilities Act] or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction." (§ 701.) "Additional powers and jurisdiction that the commission exercises, however, 'must be cognate and germane to the regulation of public utilities . . . .' " (*Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 905-906.) More important, "[p]ast decisions of [our Supreme C]ourt have rejected a construction of section 701 that would confer upon the Commission powers contrary to other legislative directives, or to express restrictions placed upon the Commission's authority by the Public Utilities Code." (*Assembly v. Public Utilities Com.* (1995) 12 Cal.4th 87, 103.)

---

**5**   All of the parties here assume that the pedestrian paths that cross the railroad track at issue in this case qualify as public roads, highways, or streets within the meaning of sections 1201 and 1202, and we proceed on the same assumption.

Thus, however broad the scope of the commission's authority over railroad crossings may be, the commission does not have the authority to contravene the expressed will of the Legislature in this area.  In the railroads' view, however, that is exactly what the commission will be doing if the commission approves the city's application in this case and orders the railroads to stop sounding their locomotive horns at the pedestrian rail crossings along the city's beach trail.  According to the railroads, section 7604 "mandates the use of locomotive-mounted audible warning devices for trains approaching any and all railroad grade crossings within the State of California, including each of the San Clemente pedestrian grade crossings, and it does not give the Commission authority to restrict their use."

II

*The History Of Section 7604*

A.  *1861 to 2001*

Because the history of section 7604 will be relevant to our evaluation of the railroads' argument -- or, more specifically, to the counter-arguments offered by the city and the commission -- we begin there.  Since 1861, the Legislature has expressly required trains to sound train-mounted audible warnings at railroad crossings.  In that year, as part of "[a]n Act to provide for the Incorporation of Railroad Companies, and the management of the affairs thereof, and other matters relating thereto" (Stats. 1861, ch. 532, p. 607), the Legislature mandated that "[a] bell, of at least twenty pounds' weight, shall be placed on each locomotive engine, and be rung at a distance of at least eighty rods [i.e., one-quarter mile] from the place where the railroad shall cross any street, road, or highway, and be kept ringing until it shall have crossed such street, road, or highway, under a penalty of one hundred dollars for every neglect . . . ."  (*Id.*, § 41, p. 623.)  In 1872, that statute was codified as section 486 of the Civil Code, which remained in place until 1951, when, as part of the establishment of the Public Utilities Code (Stats. 1951, ch. 764, p. 2025), the provision became section 7604 of that code.  (Stats. 1951, ch. 764,

7

p. 2184.) Prior to that, in 1937, the Legislature had amended the provision to permit the use of a steam whistle, air siren, or air whistle instead of a bell.[6] (Stats. 1937, ch. 274, § 1, p. 588.)

In 2000, the first significant change in 139 years to the provision codified as section 7604 was proposed as Senate Bill No. 1491. As a Senate committee analysis of the bill explained, the City of Roseville had "asked the [commission] for permission to create a pilot project to install an automated horn system at two railroad crossings as an alternative to having trains sound their whistles as they approach[ed] the crossings." (Sen. Com. com., Analysis of Sen. Bill No. 1491 (1999-2000 Reg. Sess.) as amended Apr. 24, 2000 [hereafter, Analysis of Sen. Bill No. 1491].) The committee analysis noted that "[t]his automated horn system, known as a 'wayside horn,' has the potential to reduce noise pollution because the horns are stationary, located at the crossing, and can be directed down the street - as opposed to a train whistle, which sounds for about a quarter mile as a train approaches a crossing." (*Ibid.*) The analysis further noted that the commission had denied Roseville's "request for a pilot project because it found the project ran contrary to state law." (*Ibid.*)

At the time, the committee analysis explained, "[s]ome cities, including Sacramento, ha[d] established 'quiet zones' in which train whistles [we]re either banned or restricted." (Analysis of Sen. Bill No. 1491.) Meanwhile, "[t]he Federal Railroad Administration (FRA), the federal agency responsible for railroad safety" had conducted a "study of Florida's train whistle ban, which found that trains not sounding their whistles were far likelier to have a collision than trains which did sound their whistles." (*Ibid.*) In response to that study, the FRA was "formulating draft regulations to limit 'quiet zones'

---

[6] In 1981, the Legislature revised section 7604 to change the distance mentioned in the statute from 80 rods to 1,320 feet (Stats. 1981, ch. 761, § 1, p. 2967), although those distances are, in fact, the same -- one-quarter mile.

8

to areas only where supplementary safety measures [we]re installed, such as four quadrant gates." (*Ibid.*) In fact, the Federal Railroad Administration had begun the process of drafting rules regarding "the use of locomotive horns at public highway-rail grade crossings" earlier in 2000 because that "rulemaking was mandated by Public Law 103-440, which added section 20153 to title 49 of the United States Code. Th[at] statute require[d] the Secretary of Transportation (whose authority in this area has been delegated to the Federal Railroad Administrator under 49 CFR 1.49) to issue regulations that require the use of locomotive horns at public grade crossings, but g[ave] the Secretary the authority to make reasonable exceptions." (71 Fed.Reg. 47614 (Aug. 17, 2006).)

As enacted in August 2000, Senate Bill No. 1491 modified sections 1202 and 7604 to authorize certain pilot projects to test the use of wayside horns in California in lieu of train-mounted bells or whistles. (Stats. 2000, ch. 263, pp. 2437-2440.) Specifically, the Legislature added subdivision (d) to section 1202, giving the commission the following additional authority:

"(d)(1) To authorize on an application-by-application basis and supervise the operation of pilot projects to evaluate proposed crossing warning devices or new technology at designated crossings, with the consent of the local jurisdiction, the affected railroad, and other interested parties, including, but not limited to, represented railroad employees.

"(2) (A) The Legislature finds and declares that for the communities of the state that are traversed by railroads, there is a growing need to mitigate train horn noise without compromising the safety of the public. Therefore, it is the intent of the Legislature that the commission may authorize pilot projects, after an application is filed and approved by the commission in at least the communities of Roseville and Lathrop to test the utility and safety of stationary, automated audible warning devices as an alternative to trains having to sound their horns as they approach highway-rail crossings.

9

"(B) In light of the pending proposed ruling by the Federal Railroad Administration on the use of locomotive horns at all highway-rail crossings across the nation, it would be in the best interest of the state for the commission to expedite the pilot projects in order to contribute data to the federal rulemaking process regarding the possible inclusion of stationary, automated warning devices as a safety measure option to the proposed federal rule." (Stats. 2000, ch. 263, § 1, p. 2438.)

Consistent with the creation of these pilot projects, the Legislature added a new subdivision (a)(3) to section 7604, as follows:

"(3) (A) The ringing of the bell or the sounding of the steam whistle, air siren, or air whistle is not required when approaching a railroad crossing that has a permanently installed audible warning device authorized by the commission that sounds automatically when an approaching train is at least 1,320 feet from the place where the railroad crosses any street, road, or highway, and that keeps sounding until the lead locomotive has crossed the street, road, or highway.

"(B) The operator of the locomotive may ring the bell or sound the steam whistle, air siren, or air whistle at crossings equipped as set forth in subparagraph (A)." (Stats. 2000, ch. 263, § 2, p. 2439)

Thus, the new legislation made it optional for the locomotive operators to sound their train-mounted bells or whistles at crossings where the new automated wayside horns were installed.

In 2001, section 1202 was further amended to allow the commission to authorize additional wayside horn pilot projects in Fremont and Newark, as well as "in any other location determined to be suitable by the commission." (Stats. 2001, ch. 393, § 1, p. 3644.) At the same time, the Legislature amended section 1202 to authorize the commission to approve a second pilot project involving "supplementary safety measures, as defined in Section 20153(a)(3) of Title 49 of the United States Code, for use on rail crossings." (Stats. 2001, ch. 393, § 1, p. 3644.) The referenced federal statute defined a

10

"supplementary safety measure" as "'a safety system or procedure, provided by the appropriate traffic control authority or law enforcement authority responsible for safety at the highway-rail grade crossing, that is determined by the Secretary (of Transportation) to be an effective substitute for the locomotive horn in the prevention of highway-rail casualties.' " (Sen. Com. com., Analysis of Assem. Bill No. 1249 (2001-2002 Reg. Sess.) as amended Jul. 2, 2001, quoting 49 U.S.C. § 20153(a)(3).) The Legislature, however, included a sunset provision relating to these supplementary safety measures, specifically providing that no new pilot project of this type "may be authorized after January 1, 2003" and requiring the commission to report on the outcome of this pilot project by March 31, 2004. (Stats. 2001, ch. 393, § 1, p. 3644; see also Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1249 (2001-2002 Reg. Sess.) as amended Sept. 6, 2001, p. 2.)

B. *2006*

In April 2005, the Federal Railroad Administration published its final rule on the use of the locomotive horns at public highway-rail grade crossings. (49 C.F.R. §§ 222.1-222.59 (2006); 70 Fed.Reg. 21844 (Apr. 27, 2005).) Paragraph (a) of section 222.7 of the regulations provided that with the exception of certain crossings within six counties in Illinois, "issuance of this part preempts any State law, rule, regulation, or order governing the sounding of the locomotive horn at public highway-rail grade crossings." (49 C.F.R. §§ 222.3(c), 222.7(a) & (b), 222.9 (2006) [definition of "Chicago Region"]; 70 Fed.Reg. 21844, 21888-81889 (Apr. 27, 2005).) Paragraph (a) of section 222.21 of the regulations provided that "[e]xcept as provided in this part, the locomotive horn on the lead locomotive of a train, lite locomotive consist, individual locomotive, or lead cab car shall be sounded when such locomotive or lead cab car is approaching a public highway-rail grade crossing." (70 Fed.Reg. 21844, 21891-21892 (Apr. 27, 2005).) The regulations defined a "locomotive horn" as "a locomotive air horn, steam whistle, or similar audible warning device . . . mounted on a locomotive or control cab car." (49 C.F.R. § 222.9

11

(2006); 70 Fed.Reg. 21844, 21890 (Apr. 27, 2005).) Paragraph (a) of section 222.21 of the regulations specifically provided for the sounding of the horn "with two long blasts, one short blast and one long blast." (70 Fed.Reg. 21844, 21892 (Apr. 27, 2005).) Paragraph (b)(1) of that section dictated when the sounding must begin. (*Ibid.*) Sections 222.25 and 222.27 of the regulations provided that the routine sounding of locomotive horns was not required at private highway-rail grade crossings or at pedestrian crossings and that the regulations were not intended to affect state laws regarding the routine sounding of locomotive horns at those crossings. (*Ibid.*) The regulations also provided procedures and prerequisites for establishing quiet zones where locomotive horns are not required to be routinely sounded at public highway-rail grade crossings. (70 Fed.Reg. 21844, 21891 [definition of "quiet zone"], 21893-21901 [Subpart C of part 222, quiet zone regulations] (Apr. 27, 2005).)

In April 2006, following the enactment of the federal regulations, a California Assembly bill addressing various railroad safety and maintenance issues was amended to include a provision revising section 7604 in response to the new federal regulations. (Assem. Bill No. 1935 (2005-2006 Reg. Sess.) as amended Apr. 18, 2006.) In its initial form, the amendment to Assembly Bill No. 1935 proposed to include within section 7604 language taken straight from the federal regulations, including the definition of a "locomotive horn." (Assem. Bill No. 1935 (2005-2006 Reg. Sess.) § 5, as amended Apr. 18, 2006 [proposed language of § 7604, subd. (a)(2)].) The bill also proposed to include the following language in section 7604 regarding the required use of a locomotive horn:

"(b) Except in a quiet zone, a locomotive horn shall be sounded when a locomotive is approaching a public highway-rail grade crossing in accordance with Section 222.21 of Title 49 of the Code of Federal Regulations.

"(c) Except in a quiet zone, a locomotive horn shall be sounded when a locomotive is approaching a private highway-rail crossing or pedestrian crossing in the

12

same manner and circumstances that the locomotive horn would be required to be sounded pursuant to subdivision (b)." (Assem. Bill No. 1935 (2005-2006 Reg. Sess.) § 5, as amended Apr. 18, 2006 [proposed language of § 7604, subds. (b) & (c)], italics deleted.)

With regard to this amendment, the Legislative Counsel's Digest explained as follows:

"Pursuant to the FRSA, the Secretary of Transportation has adopted regulations to provide for safety at public highway-rail grade crossings, as defined, by requiring use of a locomotive horn, as defined, except in quiet zones, as defined, established and maintained in accordance with those regulations. These regulations expressly preempt any state law, rule, regulation, or order governing the sounding of locomotive horns at public highway-rail grade crossings, but are not intended to affect, nor do they preempt, any state law, rule, regulation, or order governing the sounding of locomotive horns at private highway-rail grade crossings, as defined, or pedestrian crossings, as defined.

"[¶] . . . [¶]

"This bill would delete existing state law relative to the equipping and sounding of locomotive bells and would instead require that a locomotive horn be sounded when a locomotive is approaching a public highway-rail grade crossing in accordance with the regulations adopted by the Secretary of Transportation, except in a quiet zone. The bill would additionally require that a locomotive horn be sounded when a locomotive is approaching a private highway-rail crossing or pedestrian crossing in the same manner and circumstances that the locomotive horn would be required to be sounded when a locomotive is approaching a public highway-rail grade crossing." (Legis. Counsel's Dig., Assem. Bill No. 1935 (2005-2006 Reg. Sess.) as amended Apr. 18, 2006, italics deleted.)

In May 2006, the provision in Assembly Bill No. 1935 revising section 7604 in response to the federal regulations was completely rewritten. (Assem. Bill No. 1935 (2005-2006 Reg. Sess.) § 3, as amended May 26, 2006.) The new proposed language did

13

not incorporate the definition of a locomotive horn from the federal regulations or specifically provide that the sounding of a locomotive horn was required. Instead, the new language read as follows:

"(a) (1) Except as provided in paragraph (3), a bell, siren, horn, whistle, or similar audible warning device shall be sounded at any public crossing in accordance with Section 222.21 of Title 49 of the Code of Federal Regulations.

"(2) Except as provided in paragraph (3), a bell, siren, horn, whistle, or similar audible warning device shall be sounded, consistent with paragraph (1), at all rail crossings not subject to the requirements of Subpart B (commencing with Section 222.21) of Part 222 of Title 49 of the Code of Federal Regulations, including private highway-rail grade crossings and pedestrian crossings.

"(3) A bell, siren, horn, whistle, or similar audible warning device shall not be sounded in those areas designated and approved by the Federal Railroad Administration as quiet zones pursuant to Subpart C (commencing with Section 222.33) of Part 222 of Title 49 of the Code of Federal Regulations." (Assem. Bill No. 1935 (2005-2006 Reg. Sess.) § 3, as amended May 26, 2006 [proposed language of § 7604, subds. (a)(1)-(3)], italics deleted.)

With regard to this changed language, the Legislative Counsel's Digest noted as follows: "This bill would delete existing state law relative to the equipping and sounding of locomotive bells and would instead require that a ~~locomotive horn be sounded when a locomotive is approaching a public highway-rail grade~~ *bell, siren, horn, whistle, or similar audible warning device be sounded at any public* crossing in accordance with the regulations adopted by the Secretary of Transportation, except in a quiet zone. The bill would additionally require that a ~~locomotive horn be sounded when a locomotive is approaching a private highway-rail crossing or pedestrian crossing~~ *bell, siren, horn, whistle, or similar audible warning device be sounded at all rail crossings not subject to the requirements of the regulations adopted by the Secretary of Transportation, including*

14

*private highway-rail grade crossings and pedestrian crossings, except in a quiet zone,* in the same manner and circumstances ~~that the locomotive horn would be required to be sounded when a locomotive is approaching a public highway-rail grade~~ *as required at a public* crossing." (Legis. Counsel's Dig., Assem. Bill No. 1935 (2005-2006 Reg. Sess.) as amended May 26, 2006.)

In August 2006, while Assembly Bill No. 1935 was still pending in the California Legislature, the Federal Railroad Administration amended and clarified its final rule regarding the use of locomotive horns at highway-rail grade crossings in response to petitions for reconsideration and associated letters in support. (71 Fed.Reg. 47614 (Aug. 17, 2006).) As relevant here, sections 222.25 and 222.27 of the regulations were revised to preempt state law with respect to private highway-rail grade crossings and pedestrian crossings only to the extent that state law required the sounding of a locomotive audible warning device at any of those crossings for a period of time or in a pattern different from the locomotive horn sounding requirements set forth in section 222.21. (71 Fed.Reg. at 47619-47620.) As a result, the amended federal regulations provide that where state law requires the sounding of a locomotive horn at private highway-rail grade crossings and/or pedestrian crossings, the locomotive horn must be sounded in accordance with section 222.21. (49 C.F.R. §§ 222.25, 222.27 (2006); 71 Fed.Reg. 47614, 47638 (Aug. 17, 2006).)

A week after the release of the amended federal rule, the following changes were made to the language proposed for subdivisions (a)(2) and (a)(3) of section 7604 in Assembly Bill No. 1935:

"(2) Except as provided in paragraph (3), a bell, siren, horn, whistle, or similar audible warning device shall be sounded, consistent with paragraph (1), at all rail crossings not subject to the requirements of Subpart B (commencing with Section 222.21) of Part 222 of Title 49 of the Code of Federal Regulations~~, including private highway-rail grade crossings and pedestrian crossings~~.

15

"(3) A bell, siren, horn, whistle, or similar audible warning device shall not be sounded in those areas ~~designated and approved by the Federal Railroad Administration~~ *established* as quiet zones pursuant to Subpart C (commencing with Section 222.33) of Part 222 of Title 49 of the Code of Federal Regulations."  (Assem. Bill No. 1935 (2005-2006 Reg. Sess.) § 3, as amended Aug. 22, 2006 [proposed language of § 7604, subds. (a)(2)-(3)].)

Despite the revisions to sections 222.25 and 222.27 of the federal regulations providing for the limited preemption of state law governing private highway-rail grade crossings and pedestrian crossings (as described above), the Legislative Counsel's Digest continued to assert that the federal regulations were "not intended to affect, nor do they preempt, any state law, rule, regulation, or order governing the sounding of locomotive horns at private highway-rail grade crossings, as defined, or pedestrian crossings, as defined."  (Legis. Counsel's Dig., Assem. Bill No. 1935 (2005-2006 Reg. Sess.) as amended Aug. 22, 2006.)

Assembly Bill No. 1935 was enacted into law on September 30, 2006, without further substantive changes to the provisions revising section 7604 in response to the federal regulations.  Accordingly, in its present form, section 7604 provides as follows:

"(a)(1) Except as provided in paragraph (3), a bell, siren, horn, whistle, or similar audible warning device shall be sounded at any public crossing in accordance with Section 222.21 of Title 49 of the Code of Federal Regulations.

"(2) Except as provided in paragraph (3), a bell, siren, horn, whistle, or similar audible warning device shall be sounded, consistent with paragraph (1), at all rail crossings not subject to the requirements of Subpart B (commencing with Section 222.21) of Part 222 of Title 49 of the Code of Federal Regulations.

"(3) A bell, siren, horn, whistle, or similar audible warning device shall not be sounded in those areas established as quiet zones pursuant to Subpart C (commencing with Section 222.33) of Part 222 of Title 49 of the Code of Federal Regulations.

16

"(4) This section does not restrict the use of a bell, siren, horn, whistle, or similar audible warning device during an emergency or other situation authorized in Section 222.23 of Title 49 of the Code of Federal Regulations.

"(b) Any railroad corporation violating this section shall be subject to a penalty of two thousand five hundred dollars ($2,500) for every violation.  The penalty may be recovered in an action prosecuted by the district attorney of the proper county, for the use of the state.  The corporation is also liable for all damages sustained by any person, and caused by its locomotives, train, or cars, when the provisions of this section are not complied with."

III

*Application Of Section 7604 To The Present Dispute*

A.  *The Statutory Language*

With the current language of section 7604 and the history of the statute in mind, we turn to the question raised in this case -- whether section 7604 mandates the use of a locomotive-mounted audible warning device for a train approaching a pedestrian rail crossing in California that is not in a federally established quiet zone.  We conclude it does.

Subdivision (a)(1) of section 7604 mandates that, except in a quiet zone established pursuant to the federal regulations, "a bell, siren, horn, whistle, or similar audible warning device shall be sounded at any public crossing in accordance with Section 222.21 of Title 49 of the Code of Federal Regulations."  At the same time, subdivision (a)(2) of the statute mandates that, except in a quiet zone established pursuant to the federal regulations, "a bell, siren, horn, whistle, or similar audible warning device shall be sounded, consistent with paragraph (1), at all rail crossings not subject to the

requirements of Subpart B (commencing with Section 222.21) of Part 222 of Title 49 of the Code of Federal Regulations."**7**

To the extent the pedestrian crossings at issue here are "public crossings," by its plain language subdivision (a)(1) of section 7604 mandates that an audible warning device must be sounded at those crossings "in accordance with Section 222.21 of Title 49 of the Code of Federal Regulations." Moreover, to the extent the pedestrian crossings at issue here are "not subject to the requirements of Subpart B . . . of Part 222 of Title 49 of the Code of Federal Regulations" because they are not public *highway-rail* grade crossings, subdivision (a)(2) of section 7604 likewise mandates that an audible warning device must be sounded at those crossings "consistent with paragraph (1)" of subdivision (a) of section 7604 -- that is, "in accordance with Section 222.21 of Title 49 of the Code of Federal Regulations."**8** Thus, whether the pedestrian crossings at issue here are governed by subdivision (a)(1), subdivision (a)(2), or both, section 7604 mandates that an audible warning device must be sounded at those crossings in accordance with section 222.21 of title 49 of the Code of Federal Regulations.

---

**7** For ease of reference, we will use the term "audible warning device" as shorthand for the statutory phrase "a bell, siren, horn, whistle, or similar audible warning device."

**8** The legislative history of the amendments to section 7604 following the promulgation of the federal regulations in 2005, as detailed above, supports the conclusion that the Legislature considered private highway-rail grade crossings and pedestrian crossings to be "not subject to the requirements of Subpart B (commencing with Section 222.21) of Part 222 of Title 49 of the Code of Federal Regulations" because prior to the August 2006 amendments to the federal regulations, sections 222.25 and 222.27 of those regulations expressly provided that the regulations were not intended to affect state laws regarding the routine sounding of locomotive horns at those types of crossings. In the end, however, it does not matter whether the Legislature intended pedestrian crossings to fall under subdivision (a)(1) or (a)(2) of section 7604 because, as we note in the text, the requirement of section 7604 is the same in either event -- an audible warning device must be sounded at those crossings in accordance with section 222.21 of title 49 of the Code of Federal Regulations.

Of course, this conclusion requires us to determine what it means to sound an audible warning device "in accordance with Section 222.21." By its plain terms, section 222.21 dictates when a "locomotive horn" must be used at a public highway-rail grade crossing. The federal regulations define a "locomotive horn" as "a locomotive air horn, steam whistle, or similar audible warning device *mounted on a locomotive or control cab car*." (49 C.F.R. § 222.9 (2006), italics added.) Paragraph (a) of section 222.21 of the regulations specifically provides for the pattern of the sounding of the horn -- "two long blasts, one short blast and one long blast." Paragraph (b)(2)-(3) of the section provides for the place where the sounding must begin -- "at least 15 seconds, but no more than 20 seconds, before the locomotive enters the crossing," unless the locomotive is traveling in excess of 60 miles per hour, in which case the sounding "shall not begin . . . more than one-quarter mile . . . in advance of the . . . crossing." Paragraph (d) of the section contains specific provisions for trains that approach a crossing after first stopping in close proximity to the crossing. And paragraph (e) of section 222.21 provides that "[w]here State law requires the sounding of a locomotive audible warning device other than the locomotive horn . . . , the locomotive audible warning device shall be sounded in accordance with paragraphs (b) and (d) of this section."

The railroads argue that "because . . . sections 7604(a)(1) and (a)(2) incorporate 49 CFR § 222.21 for pedestrian grade crossings, section 7604 clearly requires the use of a *locomotive-mounted* audible warning device" at those pedestrian crossings. (Italics added.) In other words, in the railroads' view, only the sounding of an audible warning device mounted on a locomotive can be considered "in accordance with [s]ection 222.21."

The commission argues that "[n]o language in section 7604 requires the use of a locomotive or train mounted horn" and that "[t]he terms locomotive horn or train mounted horn or any other term embodying the concept of a locomotive or train mounted horn simply do not appear anywhere in the language of section 7604." "Rather," the

19

commission argues, "the actual language of section 7604 allows the use of a 'bell, siren, horn, whistle, or similar audible warning device.' " In a similar vein, the city argues that "[t]he clear and unambiguous language of section 7604 requiring the sounding of 'a bell, siren, horn, whistle, or similar audible warning device' at rail crossings contains no language limiting such audible warning devices to locomotive-mounted devices," and the railroads "may not, under the guise of statutory construction, attempt to rewrite section 7604 to include a requirement to use locomotive-mounted audible warning devices where none exists."

The commission and the city are both correct on one very limited point: section 7604 does not, by its own terms, expressly require the use of an audible warning device mounted on a locomotive. But the statute *does* expressly require the sounding of an audible warning device "in accordance with [s]ection 222.21," and section 222.21 expressly requires the sounding of a locomotive horn, which by definition means an audible warning device mounted on a locomotive or control cab car. (49 C.F.R. § 222.9 (2006).) Neither the commission nor the city explains how the sounding of an audible warning device mounted at the crossing, instead of on the locomotive, can be considered "in accordance with [s]ection 222.21," when that section of the federal regulations, by its very terms, requires the sounding of an audible warning device *mounted on a locomotive*.

This gap in the commission's (and the city's) argument is highlighted by the commission's contention that "section 7604 merely states that 'a bell, siren, horn, whistle, or similar audible warning device shall be sounded . . . .' " That is not what section 7604 says at all. What the statute says is that "a bell, siren, horn, whistle, or similar audible warning device shall be sounded . . . *in accordance with Section 222.21 of Title 49 of the Code of Federal Regulations*." (§ 7604, subd. (a)(1), italics added.) The commission and the city make no attempt to explain how this qualifying phrase can reasonably be understood not to encompass the express requirement in section 222.21 that what must be sounded is an audible warning device *mounted on a locomotive*. Thus, we conclude that

20

the statutory language of section 7604 supports only one reasonable conclusion here: the Legislature intended to require the sounding of a locomotive-mounted audible warning device at pedestrian rail crossings in California (except at those crossings located in a quiet zone established pursuant to the federal regulations).

## B. *The Legislative History*

Beyond the statutory language, the commission and the city both argue that the legislative history of section 7604 favors their interpretation of the statute. Although we need not consider legislative history in the absence of ambiguity in the language of the statute (see, e.g., *Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 269), which we have not found, even if we consider the legislative history of section 7604, it does not support the construction of the statute the commission and the city both advance, but instead supports the railroads' view of the statute.

According to the city, because the 2006 amendment to section 7604 "deleted th[e] requirement" "that bells, whistles or sirens be 'placed on' or 'attached' to a locomotive" "and replaced it with the broad language allowing the use of a 'bell, siren, horn, whistle, or similar audible warning device,'" the Legislature must have "no longer intended that audible warning devices be limited to those that are locomotive-mounted." Similarly, the commission argues that "[t]he legislative history of section 7604 shows that the Legislature acted deliberately when it amended the prior version of section 7604, which required [locomotive-mounted] bells or whistles to be sounded at public highway-rail crossing, and adopted the current version of section 7604, which *does not* require the use of train mounted warning devices."

In our view, however, what the history of the 2006 amendment to section 7604 shows is that the Legislature *did* intend to require the use of train-mounted audible warning devices at all crossings in California, including pedestrian crossings like those at issue here (with the exception of crossings located in quiet zones established pursuant to the federal regulations). Recall that before the 2006 legislative action, section 7604 and

21

its predecessor statutes had expressly required trains to sound train-mounted audible warning devices at railroad crossings in California for nearly 150 years. As we have explained, in 2005 the Federal Railroad Administration promulgated federal regulations that made the sounding of a locomotive-mounted audible warning device at public highway-rail grade crossings a requirement of federal law. (49 C.F.R. § 222.21(a) (2006); 70 Fed.Reg. 21844, 21891-21892 (Apr. 27, 2005).) At the same time, those federal regulations left the sounding of locomotive horns at pedestrian crossings entirely to the states to regulate. (49 C.F.R. § 222.27 (2006); 70 Fed.Reg. 21844, 21892 (Apr. 27, 2005).)

It was in this context that the initial amendment to section 7604 was proposed. (Assem. Bill No. 1935 (2005-2006 Reg. Sess.) as amended Apr. 18, 2006.) As initially drafted, subdivision (b) of the proposed new version of section 7604 expressly required the sounding of a locomotive horn at public highway-rail grade crossings "in accordance with Section 222.21 of Title 49 of the Code of Federal Regulations." (Assem. Bill No. 1935 (2005-2006 Reg. Sess.) § 5, as amended Apr. 18, 2006 [proposed language of § 7604, subd. (b)].) At the same time, even though the new federal regulations did not require it, subdivision (c) of the proposed new version of section 7604 expressly required the sounding of a locomotive horn at private highway-rail grade crossings and at pedestrian crossings "pursuant to subdivision (b)." (Assem. Bill No. 1935 (2005-2006 Reg. Sess.) § 5, as amended Apr. 18, 2006 [proposed language of § 7604, subd. (c)].) Thus, it was clear at the outset of the process of revising section 7604 in response to the new federal regulations that the Legislature intended to preserve the historical requirement that locomotive-mounted audible warning devices were to be sounded at *all* railroad crossings in California except those located in quiet zones, even though federal law did not require it.

When the provisions in Assembly Bill No. 1935 revising section 7604 were amended in May 2006 to the language presently contained in the statute, there is no indication in the legislative history that the Legislature suddenly intended to depart from its initial intent to preserve this historical requirement. From all appearances, the May 2006 revision of the bill was cosmetic, not substantive. Instead of incorporating into section 7604 language taken from the federal regulations, the Legislature opted to simplify the statute by merely referring to the federal regulations. Thus, the language proposed for subdivision (a)(1) of section 7604 required "a bell, siren, horn, whistle, or similar audible warning device" to be sounded "at any public crossing in accordance with Section 222.21 of Title 49 of the Code of Federal Regulations." (Assem. Bill No. 1935 (2005-2006 Reg. Sess.) § 3, as amended May 26, 2006 [proposed language of § 7604, subd. (a)(1)].) Similarly, the language proposed for subdivision (a)(2) of the statute required the sounding of "a bell, siren, horn, whistle, or similar audible warning device . . . consistent with paragraph (1), at all rail crossings not subject to the requirements of Subpart B (commencing with Section 222.21) of Part 222 of Title 49 of the Code of Federal Regulations." (Assem. Bill No. 1935 (2005-2006 Reg. Sess.) § 3, as amended May 26, 2006 [proposed language of § 7604, subd. (a)(2)].)

Since no other explanation has been offered for the May 2006 revision to the proposed amendments to section 7604, we believe the Legislature recognized that to preserve the historical requirement that locomotive-mounted audible warning devices were to be sounded at all railroad crossings in California except those in quiet zones, it was not necessary to include verbatim large amounts of language from the federal regulations, but instead it was sufficient to require the sounding of an audible warning device "in accordance with Section 222.21" -- since that federal regulation expressly requires the sounding of a *locomotive-mounted* audible warning device.

23

In sum, while it is true, as the city argues, that the 2006 amendment to section 7604 deleted the express requirement "that bells, whistles or sirens be 'placed on' or 'attached' to a locomotive," it is not true that the Legislature simply "replaced [that requirement] with the broad language allowing the use of a 'bell, siren, horn, whistle, or similar audible warning device.' " Instead, the Legislature replaced the express requirement of a locomotive-mounted audible warning device with the express requirement that an audible warning device be sounded "in accordance with Section 222.21 -- a federal regulation that itself expressly requires the sounding of a "[l]ocomotive horn," which by definition means an audible warning device "mounted on a locomotive or control cab car." (49 C.F.R. § 222.9 (2006).) In making this amendment to the statute, the Legislature plainly signaled its intent not to deviate from the long-standing requirement of state law that an audible warning device mounted on a locomotive must be sounded at *every* railroad crossing in California, with the exception of those within quiet zones established pursuant to the federal regulations.

IV

*Conclusion*

Because the pedestrian crossings at issue here are not within a quiet zone established pursuant to the federal regulations, by the command of the Legislature in section 7604 a locomotive-mounted audible warning device must be sounded at those crossings. And because the commission does not have the authority to contravene the will of the Legislature as expressed in section 7604, the commission does not have the authority to grant the city's application to the extent that application asks the commission to approve the use of wayside horns in lieu of train horns at the pedestrian crossings along the city's beach trail. The commission erred in concluding otherwise.

24

## DISPOSITION

The commission's Decision Regarding Jurisdiction (Decision No. 12-08-028) is set aside.

                                     ROBIE , J.

We concur:

HULL , Acting P. J.

DUARTE , J.